IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CASSANDRA WEEKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12 C 10056 |
| | ) | |
| CITY OF CHICAGO, DENNIS | ) | |
| HUBERTS, RICHARD ANTONSEN, | ) | |
| MICHAEL KOCANDA, GREGORY | ) | |
| SLOYAN, ANTHONY HICKS, | ) | |
| and BRANDON SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Cassandra Weeks has filed suit against the City of Chicago and Chicago police officers Sergeant Gregory Sloyan, Dennis Huberts, Richard Antonsen, Michael Kocanda, Anthony Hicks, and Brandon Smith pursuant to 42 U.S.C. § 1983. The lawsuit concerns events related to the search of Weeks's home and her subsequent arrest on August 31, 2012. Weeks alleges that the defendants violated her Fourth Amendment rights by obtaining an unjustified search warrant for her house, failing to knock and announce their office, damaging her property, arresting her, and stealing a television. Weeks has also brought state law claims for trespass and malicious prosecution.

Defendants have moved for summary judgment against Weeks on all of her claims. For the reasons detailed below, the Court grants summary judgment for defendants on the claims for obtaining the search warrant and unreasonable property

damage, as well as the state law trespass claim, and for three of the defendants on the claim involving theft of the television. The Court denies defendants' motion on the remaining claims and defendants.

## Background

On August 31, 2012, officers Huberts, Antonsen, Kocanda, Hicks, and Smith, along with Sergeant Sloyan, executed a search warrant for the premises of 10525 S. Bensley, which was Weeks's residence. Officer Huberts obtained the search warrant based on interactions with a confidential witness beginning on August 27, 2012, when the witness, referred to as John Doe, informed Huberts that a man named Kevin Rogers was selling drugs at 10525 S. Bensley.

To corroborate Doe's statements, Huberts showed him an array of booking photographs, and Doe correctly identified a photo of Rogers. Huberts also obtained a number of pictures of residences from the Cook County Assessor's website, and Doe correctly identified the residence that matched the address he had provided to Huberts. Huberts then drove Doe to the area of 10525 S. Bensley, and Doe verified both the residence and the door through which he had entered to engage in the drug transactions. For further verification, Huberts performed a background check on Kevin Rogers, which revealed that he had been arrested for possession of narcotics at 10525 S. Bensley in January 2012.

With this information in hand, Huberts began compiling a complaint for a search warrant, and Doe signed an affidavit to include with the complaint. In the affidavit, Doe stated that he observed Kevin Rogers sell approximately one pound of cannabis at the 10525 S. Bensley residence. Doe also stated that he had purchased cannabis on

numerous occasions from Rogers during the prior year. He stated that he continued to purchase cannabis from Rogers because it consistently produced a euphoric high for his customers.

In addition to Doe's affidavit regarding his first-hand observations, the complaint for search warrant referenced Doe's positive identification of Rogers from a photo spread and his positive identification of the house when taken to the location. The information regarding Roger's previous arrest at 10525 S. Bensley was not typed into the complaint for search warrant. At some point in time, however, Huberts added a handwritten note on the complaint for search warrant stating that "[o]n more than one previous occasion Kevin Rogers . . . has used the address of 10525 S Bensley when arrested." Defs.' Ex. B at QH 014. This was incorrect; Rogers had given 10525 S. Bensley as his address in connection with only one arrest. Finally, the complaint recited that Huberts provided Doe's criminal history to the judge. 'Weeks agrees that at the time he provided the information to Huberts, Doe was not in police custody or under arrest and had no charges pending against him.

On August 28, Huberts and John Doe appeared before Judge Angela Petrone with the complaint for search warrant and Doe's criminal history. Huberts testified during his deposition that it was during his appearance before Judge Petrone that he added the handwritten note about Rogers's purported previous arrests at 10525 S. Bensley. Judge Petrone signed a warrant authorizing a search of the premises of 10525 S. Bensley.

The six defendants and other officers arrived at 10525 S. Bensley to execute the warrant on August 31, 2012. The officers claim that they knocked on the front door and

3

announced their office multiple times. They say that after they waited and no one responded, the officers breached the door with a battering ram. Iesha Warren, a neighbor of Weeks, provides a competing account of the entry into the house. Warren reports that she witnessed the entire proceedings while sitting on her porch, where she could see Weeks's house. Warren claims that the police officers broke down the door immediately upon approaching the house. During this entry, the door frame was damaged.

    The police entered Weeks's residence and cleared the house room by room. The officers say they then took pictures of the house to document its condition before they executed the search warrant. Then they searched the house. Weeks says that during the search, the police vandalized her possessions, left her rooms in disarray, and poured out cereal. The officers say that a drug detection dog alerted to the presence of narcotics near a dresser in the rear bedroom. They contend that after searching the room, they found several small baggies of suspect heroin located in a cup on a shelf of the same dresser and a bag of cannabis in one of the dresser's drawers. Weeks disputes the presence of the drugs in her room prior to the search; she claims that the police planted the drugs.

    Iesha Warren notified Weeks that the police had entered her home. Weeks, accompanied by her cousin Kilyla Carter, returned to 10525 S. Bensley. Weeks verified to the officers that she lived at 10525 S. Bensley and allegedly denied that Kevin Rogers lived there. The police then showed Weeks the suspect heroin and the cannabis, informing her that they had been found in the dresser in the rear bedroom. Sergeant Sloyan and officer Huberts, and possibly officer Smith, placed Weeks under

arrest.

During this time, Warren and Carter both claim to have seen police officers removing a flat-screened television from Weeks's house. Warren says she saw two Hispanic police officers in uniform carrying a television in the backyard of the property. Carter remained on the premises during the entire episode; she claims she saw two officers in plain clothes taking the television out of the back of the house and through the garage before placing it in the back of a Crown Victoria parked in an alley behind the home. She said she believes the officers were African-American, but she is not entirely certain of that. Weeks says that when she returned to her home after her release from custody, she says, the flat-screened television from her basement was missing. Five officers recall going into the basement; two of these officers are not Caucasian. The officers, however, deny removing a television from the house, and 'photographs that Sergeant Sloyan says were taken after the search show the television still in Weeks's basement.

The police tested the suspect heroin, and the lab results came back negative. Ultimately the charges against Weeks were dropped. Weeks later filed this lawsuit against the defendants.

**Discussion**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). ""Summary judgment is

inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. When considering the record on summary judgment, the court does not assess the credibility of the witnesses. *Id.* at 255. Resolving conflicts in testimony is a matter for the finder of fact.

**1.     Claims for unreasonable search and trespass**

Weeks claims that the search of her home violated the Fourth Amendment's prohibition against unreasonable searches. Defendants contend that the search was conducted pursuant to a valid warrant based on probable cause and that this also serves as a defense to the trespass claim because it gave them a lawful basis to enter the property.

A search warrant is appropriately issued if the magistrate who issues the warrant finds "probable cause for believing the occurrence of a crime and the secreting of evidence in specific premises." *United States v. Harris*, 403 U.S. 573, 584 (1971). An officer operating pursuant to a facially valid search warrant signed by a judicial officer violates 'the constitutional rights of the subject of the search only "if reasonably well-trained officers in their positions should have known that the testimony or affidavits they provided in support of the warrants would have failed to establish probable cause, so that they should not have applied for the warrants in the first place." *Beauchamp v. City of Noblesville,* 320 F.3d 733, 742 (7th Cir. 2003) (citing *Malley v. Briggs,* 475 U.S. 335, 345 (1986)).

Weeks alleges that the search warrant was issued as a result of misrepresentations in the warrant application and that the application was otherwise

deficient. To prevail on her claim, she must show that Huberts submitted false statements to Judge Petrone knowingly or with a reckless disregard for the truth, and that the false statements were necessary to the judge's determination that probable cause existed for the search warrant. *See id*. "A 'reckless disregard for the truth' is demonstrated by showing that the officers entertained serious doubts as to the truth of their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause." *Id.* at 743.

Weeks contends that Officer Huberts knowingly or recklessly made a false statement in the complaint for search warrant when he wrote, "On more than one previous occasion Kevin Rogers . . . has used the address of 10525 S. Bensley Ave. when arrested." Huberts discovered Rogers's connection with 10525 S. Bensley during his investigation to attempt to corroborate John Doe's statements. It appears that the records Huberts reviewed listed only one arrest for Rogers where he gave that address. Based on this information, a reasonable jury could conclude that Huberts had an obvious reason to doubt the veracity of the statement that Rogers had given the 10525 S. Bensley address more than once when arrested. In short, a reasonable jury could find that Huberts acted at least recklessly in making the false statement.

To succeed on her claim, however, Weeks must also show that but for Huberts's misstatement, there would not have been probable cause for the search warrant. "[A]n affidavit procured in part by tainted evidence is not necessarily invalid[,] because the untainted information, considered by itself, may establish probable cause for the warrant to issue." *Forman v. Richmond Police Dep't*, 104 F.3d 950, 964 (7th Cir. 1997).

7

Probable cause exists when there is "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n.13 (1983). The test for probable cause for a search warrant is based on the totality of circumstances, and in the context of informants, the "inquiry generally focuses on the informant's reliability, veracity, and basis of knowledge." *Junkert v. Massey*, 610 F.3d 364, 368 (7th Cir. 2010) (internal quotation marks omitted). The factors considered include:

> (1) the degree of police corroboration of the informant's information; (2) whether the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge.

*Id.*

In this case, all five factors support a finding of probable cause even when one sets aside the erroneous statement that Rogers gave the 10525 S. Bensley address more than once. Doe stated that he observed a drug transaction at 10525 S. Bentley first hand, and he provided detailed information regarding the amount and type of narcotic being sold, as well as the general layout of the residence. Additionally, the interval between the transaction Doe saw and the issuance of the search warrant was only two days, so the information Doe provided was fresh. Furthermore, Doe also appeared personally before the judge who approved the search warrant and verified the information in his affidavit, so the judge had the opportunity to observe Doe and his demeanor. Finally, there was corroboration for elements of Doe's story. Doe had identified Rogers from an array of booking photos; he had identified the home at 10525

8

S. Bensley from a photo array of houses; and he had verified his identification of the home when Officer Huberts drove him by the property.  Also, police records reflected that on one occasion when he was arrested for possession of narcotics, Rogers listed 10525 S. Bensley as his residence.  Huberts's misstatement about the extent of the connection between Rogers's prior criminal behavior and 10525 S. Bensley does not eliminate the fact that there had been an arrest involving the same person for the same type of crime at the exact same location.  Thus, Doe's statements justifiably appeared both credible and accurate.

Weeks attacks the sufficiency of Doe's affidavit as a basis for a determination of probable cause.  She contends that Doe was a first time informant, provided an anonymous tip, and confirmed his information through a self-validation process.  But although Doe had never previously worked with the police, this is not fatal to a finding of probable cause.  "Past performance is one way of establishing the veracity or reliability of an informant, but it is not the only way.  The reliability or veracity of an informant in a particular case can also be shown by corroboration of the information he provides through independent police investigation."  *United States v. Mitten*, 592 F.3d 767, 774 (7th Cir. 2010) (citing *Gates,* 462 U.S. at 241).  As discussed above, Doe's statements appeared reliable, and Huberts corroborated aspects of what Doe said with investigation of his own.  Second, Weeks seems to treat Doe as if he were an anonymous tipster.  That is not what he was.  Doe appeared in person before Judge Petrone and gave a sworn statement.  And Huberts gave the judge a copy of Doe's criminal history.  Thus although Doe was a confidential informant, he was not an anonymous tipster.  See *Draine v. Bauman*, 708 F. Supp. 2d 693, 700 (N.D. Ill. 2010)

("Identified eyewitnesses and victims are deemed reliable, and so too may be confidential informants, who stand on a very different footing than an unidentified tipster . . . with whom the police have had no prior involvement." (internal citations omitted)). Finally, Huberts did not rely on a self-validation process like the one the court found insufficient in *Draine*. In *Draine*, the informant could not identify the exact address of the location at issue; he identified the location from the single picture the police provided, and the police then supplied the address. *Id.* at 700. In contrast, John Doe himself supplied the address to Huberts, and he then identified a photo of the home from an array of photos. By matching the address to the photo at a location where the named suspect had a prior connection involving the same sort of crime, Doe's information was sufficiently validated through meaningful investigation.

Given the totality of the circumstances, no reasonable jury could find that Officer Huberts's misstatement regarding the number of prior crimes by Rogers with a connection to 10525 S. Bensley, even if reckless or deliberate, undercut the existence of probable cause to search the premises. The informant's first-hand testimony concerning recent drug transactions at the same property, conducted by a man who had recently pled guilty to the same sort of crime after being arrested there, was sufficient to establish probable cause even if the misrepresented information is set aside. For this reason, defendants are entitled to summary judgment on Weeks's section 1983 claim that it violated the constitution for the officers to search her home.

Weeks concedes that if there was probable cause for the warrant, her claim for trespass cannot survive. *See* Pl.'s Resp. to Defs.'s Mot. for Summ. J. at 14–15. Because the officers possessed a valid search warrant, the officers did not unlawfully

enter Weeks's premises.  *See, e.g.*, *Ortiz v. City of Chicago*, 686 F. Supp. 2d 782, 795 (N.D. Ill. 2010).  Defendants are therefore entitled to summary judgment on the claim of trespass.

**2.    Claim for failure to knock and announce**

Weeks also asserts a Fourth Amendment claim regarding the officers' alleged failure to knock and announce before entering her home.  The Fourth Amendment requires that "officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry."  *Richards v. Wisconsin,* 520 U.S. 385, 387 (1997).  There are some exceptions to this rule, *see Wilson v. Arkansas*, 514 U.S. 927, 936 (1995) (authorizing no-knock entries if necessary to prevent physical harm to police officers, a prisoner from escaping, or the destruction of evidence), but none apply here.  Thus the officers had an obligation to knock and announce their presence when they arrived at Weeks's residence to execute the search warrant.

Defendants say that they did in fact knock and announce before forcing their way into Weeks's residence.  *See, e.g.*, Huberts Dep. at 63; Smith Dep. at 46.  No one was home, and thus there is no testimony from any of the home's residents on this topic.  But Iesha Warren, a neighbor, has stated in an affidavit that the police went directly to the front door, forced it open with a tool, and never knocked or announced their office.  *See* Warren Dep. at 91.  Defendants attack Warren's credibility in their reply brief, but determinations of credibility are left to the finder of fact.  Because there is a genuine dispute regarding facts material to this claim, defendants are not entitled to summary judgment on this claim.

3. **Claim for damage to property**

Defendants also seek summary judgment on Weeks's Fourth Amendment claim regarding the manner in which defendants conducted the search. Weeks's claim centers on her allegations that the officers damaged the door frame through which they entered, damaged other unspecified property, and scattered cereal all over the kitchen. Defendants defend their actions as reasonable given the officers' need to use force to enter the residence and the fact that they were entitled to search for narcotics.

The Supreme Court has held that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant." *Dalia v. United States*, 441 U.S. 238, 257 (1979). Yet "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Id.* at 258. The Fourth Amendment provides a remedy when a citizen's property is unreasonably damaged during a search. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) (The "general touchstone of reasonableness which governs Fourth Amendment analysis, governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression."). Thus to prevail on her claim, Weeks must establish that the officers caused unreasonable damage during their search of her home.

The problem with Weeks's claim, however, is that she does not identify any particular damage beyond the door frame and the scattered cereal. She testified during her deposition that the police "tore my kids' room up, tore my room up, just had stuff everywhere, just vandalizing my stuff." Weeks Dep. at 78. But aside from throwing

things around, Weeks does not identify any particular actual damage inside the home. In addition, the police photos taken after the search show only upended drawers and disorganized items. *See* Defs.' Ex. J at QH 468–71, 473–77. Without Weeks providing additional evidence of the damage to her property, no reasonable jury could conclude that the officers' search caused damage to her property or that the damage was unreasonable. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (granting summary judgment against plaintiff who provided no evidence of specific property damage from search); *Branson v. Newburgh Police Dep't*, 849 F. Supp. 2d 802, 811 (S.D. Ind. 2011) (granting summary judgment for defendant because the plaintiffs relied solely on allegations that unspecified property was damaged during the search but provided no evidence). Thus, the damage claim is limited to the issues of the door frame, the cereal, and the upended drawers.

With regard to the door frame, no reasonable jury could find the damage unreasonable. When police have a valid search warrant, they are permitted to use force to enter a residence if no one answers the door, which was the case here because the house was empty. *See United States v. Banks*, 540 U.S. 31, 40 (2003); *Wilson*, 514 U.S. at 929. Because a forcible entry was necessary, some damage to the door and door frame was reasonable; no jury reasonable could find otherwise. The damage shown in the officers' photos does not exceed what a reasonable fact finder would consider reasonable. *See* Defs.' Ex. J at QH 433–34.

The upended drawers—assuming this constitutes "damage" at all, which is not entirely clear—and scattered cereal likewise could not be determined to be unreasonable under the circumstances, given the existence of the warrant to search for

13

narcotics.

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*United States v. Ross*, 456 U.S. 798, 820–21 (1982). And in view of the fact that narcotics can be hidden in even smaller locations than weapons, it was not unreasonable for the police to search through the contents of drawers or even boxes of cereal. *See Washington v. Godinez*, No. 95 C 7612, 1996 WL 599055, at *2 (N.D. Ill. Oct. 17, 1996) (officer acted reasonably when he removed ceiling tiles, tore insulation out of the ceiling, and removed and destroyed frozen food from a freezer in search of drugs). The fact that the contents of the room were left in a pile and some cereal spilled on the counter does not demonstrate that "[the officers'] intrusion went beyond what was necessary." *Dalia,* 441 U.S. at 258 n. 20.

For these reasons, defendants are entitled to summary judgment on Weeks's Fourth Amendment claim regarding the manner of execution of the search warrant.

### 4. Claims for false arrest and malicious prosecution

Weeks also asserts a claim under section 1983 for false arrest. This claim requires her to prove the absence of probable cause. *See Gonzalez v. City of Elgin,* 578 F.3d 526, 537 (7th Cir. 2009). "A police officer has probable cause to arrest a person if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution,

14

in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The jury must determine the existence of probable cause if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. Only if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists." *Id.* (internal quotation marks and citations omitted).

Defendants argue that they had probable cause to arrest Weeks because they found suspected drugs in her bedroom, which they contend was sufficient to trigger the doctrine of constructive possession. "Constructive possession exists where the evidence demonstrates ownership, dominion, authority, or control. . . ." *United States v. Richardson*, 208 F.3d 626, 632 (7th Cir. 2000) (citations omitted).

> [W]here narcotics are found on premises that are under defendant's control, it may be inferred that he had the requisite knowledge and possession, absent other facts and circumstances which might create a reasonable doubt as to defendant's guilt. The necessary control over the premises may be proved by showing that defendant lived there.

*Ortiz v. City of Chicago*, 686 F. Supp. 2d 782 (N.D. Ill. 2010).

Defendants' evidence reflects a strong nexus between Weeks and the narcotics because she was the owner of the residence, not a mere bystander, and the drugs allegedly were found in her own bedroom. She had sufficient control over the premises to establish constructive possession. Thus, if the drugs were in Weeks's bedroom, the officers had probable cause for the arrest.

There is, however, a genuine dispute regarding whether the drugs were in the bedroom prior to the search. Weeks testified in her deposition that she did not own the

drugs, Weeks Dep. at 38; she had no idea where the drugs came from, *id.* at 36–37; and they were not in her home when she left on August 31, 2012, *id.* at 73. This testimony is sufficient to give rise to a genuine factual dispute about whether the police actually found the narcotics in Weeks's bedroom. Her testimony would permit a reasonable jury to believe the drugs were planted, which appears to be her theory. *See id.* at 40. Defendants are therefore not entitled to summary judgment on Weeks's false arrest claim.

Defendants also argue that the doctrine of qualified immunity bars Weeks's false arrest claim. A police officer "is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed." *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012) (internal quotation marks omitted). The same testimony by Weeks referenced above, which would allow a reasonable jury to find the drugs were planted, precludes summary judgment on the basis of qualified immunity as well. If the drugs were not actually found in Weeks's bedroom, then Huberts, Sloyan, and Smith could not reasonably have believed probable cause existed for Weeks's arrest.

For the same reason, defendants are not entitled to summary judgment on Weeks's claim of malicious prosecution. They argue that the evidence is insufficient to show that Huberts lacked probable cause or that he had the malice required for malicious prosecution. But if a jury found the drugs were planted, as it reasonably could, this would allow the jury to find both the absence of probable cause and actual malice.

**5.     Claim for theft of television**

Weeks's final claim is for the theft of the basement television.  If it was taken, the seizure was unreasonable, as defendants have offered no evidence that the television had any investigatory value.  *See Hessel v. O'Hearn*, 977 F.2d 299, 302–03 (7th Cir. 1992) (taking a can of soda unrelated to a search warrant is actionable).  Defendants do not contest this point.  In addition, defendants' arguments regarding the inconsistencies between the accounts of the two witnesses who claim they saw officers taking the television away are fruitless for present purposes, because weighing credibility is a function for the jury to perform after a trial, not for the Court to perform in evaluating a motion for summary judgment.

Defendants nonetheless seek summary judgment on the ground that Weeks cannot establish the liability of any particular individual defendant, because she cannot identify the particular officers who took the television.  In *Hessel*, the Seventh Circuit held that a plaintiff must be able to link any damage from a police search to the individual officers claimed to have caused it, unless the plaintiff relies on an established exception to general principles of tort causation.  *Id.* at 304–05.

This does not mean, however, that all of the defendants are entitled to summary judgment on this claim.  Weeks's inability to identify by name the specific officers who she claims took the television is not fatal.  One eyewitness, Weeks's neighbor Iesha Warren, testified that she observed two Hispanic-appearing police officers in uniform carrying the television in the backyard of Weeks's property.  And Kilyla Carter was on the premises of 10525 S. Bensley when, she says, she saw two officers in plain clothes taking the television out of the back of the house and through the garage.  She believed

17

the officers were African-American but could not be entirely certain.

A reasonable jury could conclude based on these witnesses' testimony that two non-white officers took the television. Five officers—Sloyan, Antonsen, Kocanda, Hicks, and Huberts—testified about going into the basement of Weeks's home. Hicks identified himself as African-American, and Huberts identified himself as being of mixed race. Sloyan, Antonsen, and Kocanda all identified themselves as Caucasian, and Weeks offers no evidence that they had complexions darker than that of the average white person. Were a jury to believe (as it reasonably could) the testimony of one or both of the witnesses who says that two officers stole Weeks's television, it reasonably could find that the guilty officers had a darker skin complexion. And given the connection between Hicks and Huberts, the search, and going into the basement, that would be a reasonable basis to impose liability on them for the purported theft. Sloyan, Antonsen, and Kocanda are, however, entitled to summary judgment on this claim.

**Conclusion**

For the reasons stated above, the Court grants summary judgment in favor of all defendants on the claim contained in Count 1 of the amended complaint for the manner of execution of the warrant (unreasonable property damage) but not on the remaining claims in Count 1, and also grants summary judgment for defendants on Counts 2 and 3 (unreasonable procurement of the search warrant and trespass). In addition, the Court grants summary judgment in favor of defendants Sloyan, Antonsen, and Kocanda on the claim contained in Count 1 for taking Weeks's television. The Court otherwise denies defendants' motion [dkt. no. 47]. The case is set for a status hearing on August 13, 2014 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility

of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 6, 2014